Alan Van Praag, Esq.
Edward W. Floyd, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016
212.779.9910
avanpraag@evw.com
efloyd@evw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
PANABROKER PROTECTING AND INDEMNITY
ASSOCIATION, S.A.,

                              Plaintiff,

                -against-

VNESHPROMBANK (a/k/a THE FOREIGN ECONOMIC
INDUSTRIAL BANK); LM REALTY 31B, LLC; LM
REALTY 27D, LLC; LM REALTY 24C, LLC; LM
REALTY 23H, LLC; LM REALTY 20A, LLC; LM
REALTY 18 WEST, LLC; LM REALTY 10C, LLC (f/k/a
ONE RIVERSIDE PARK REALTY, LLC); and LM
PROPERTY MANAGEMENT LLC.

                            Defendants.

-------------------------------------------------------------------------x

Case No.:
ECF Case

**COMPLAINT**

Plaintiff, Panabroker Protecting and Indemnity Association, S.A. ("Plaintiff" or

"Panabroker"), by its below signed attorneys, for its Complaint against defendants, LM Realty

31B, LLC ("LM-31B"), LM Realty 27D, LLC ("LM-27D"), LM Realty 24C, LLC ("LM-24C"),

LM Realty 23H, LLC ("LM-23H"), LM Realty 20A, LLC ("LM-20A"), LM Realty 18 West,

LLC ("LM-18W"), LM Realty 10C, LLC (f/k/a One Riverside Park Realty, LLC) ("LM-10C"),

and LM Property Management, LLC ("LM Management") (collectively, the "LM Defendants"),

{00059163.DOC;2}

and Vneshprombank (a/k/a The Foreign Economic Industrial Bank) ("VPB"), alleges, on information and belief, as follows:

## PARTIES

1.      LM-31B is a New York limited liability company established on or about May 27, 2010.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Larisa Markus ("LM" or "Markus"), and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-31B also owns real property located at 10 West End Avenue, Unit 10B, New York, New York which it purchased from Larisa Markus.  (Annexed hereto as Ex. 1 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

2.      LM-27D is a New York limited liability company established on or about May 27, 2010.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-27D previously owned real property located at 10 West End Avenue, Unit 27D, New York, New York which it had purchased from Larisa Markus.  (Annexed hereto as Ex. 2 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)  However, the property was apparently sold on or about November 12, 2015.

3.      LM-24C is a New York limited liability company established on or about May 27, 2010.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-24C also owns real property located at 40 Broad Street, Unit 24C, New York, New York.  (Annexed hereto as Ex. 3

is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

4.      LM-23H is a New York limited liability company established on or about June 21, 2010.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Larisa Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-23H also owns real property located at 40 Broad Street, Unit 23H, New York, New York.  (Annexed hereto as Ex. 4 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

5.      LM-20A is a New York limited liability company established on or about June 21, 2010.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-20A also owns real property located at 40 Broad Street, Unit 20A, New York, New York.  (Annexed hereto as Ex. 5 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

6.      LM-18W is a New York limited liability company established on or about October 16, 2012.  According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose.  LM-18W also owns real property located at 18 West 48th Street, Unit 26A, New York, New York.  (Annexed hereto as Ex. 6 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

7.      LM-10C is a New York limited liability company established on or about March 20, 2015 (then as One Riverside Park Realty, LLC) and with its current name effective from April 7, 2015. According to articles of organization obtained from the New York Department of State regarding the entity's original name, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose. LM-10C also owns real property located at 50 Riverside Boulevard, Unit 10C, New York, New York. (Annexed hereto as Ex. 7 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

8.      LM Management is a New York limited liability company established on or about June 24, 2008. According to articles of organization obtained from the New York Department of State, the entity's organizer is non-party Markus, and the same records reflect that organizer as having used an address located within New York County for said purpose. LM Management also owns real property located at 10 West End Avenue, Unit 31C, New York, New York which it purchased from Larisa Markus. (Annexed hereto as Ex. 8 is a copy of the first page of the concerned deed which evidences the same and provides Block / Lot details.)

9.      At all material times, VPB was a bank organized and existing under the laws of the Russian Federation, but, on January 21, 2016, Russian banking authorities revoked VPB's license(s) because the bank's liabilities grossly exceeded its assets.

10.      Non-party Markus is the president or former-president of VPB as well as the organizer of each of the LM Defendants. As such, Markus conducted and participated in the management, operation and conduct of VPB's affairs.

11.     Plaintiff is a Panamanian entity which brings its instant breach of contract claim against VPB.  Plaintiff also brings its instant claims against each of the LM Defendants pursuant to 18 U.S.C. § 1961 *et seq.* (the Racketeer Influenced and Corrupt Organizations Act).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a).

13.     This Court has personal jurisdiction over each of the LM Defendants because each such entity is a Limited Liability Company which is doing business in, and maintains a principal place of business in, New York State.

14.     This Court has personal jurisdiction over VPB pursuant to NY C.P.L.R. § 302(a) because, amongst other things:

> a.  VPB's website provides that its "Main Correspondent Bank for transactions in" US Dollars is "CITIBANK, N.A., New York."  The same page from VPB's website also identifies the SWIFT code and related information for that New York correspondent account and reflects that the bank provides that information so that its "clients" can utilize its services relating to "investment funds," "trust management," "brokerage services," and "structured products";
>
> b.  Notably, as is further described below, the same New York correspondent bank was utilized in connection with transfers made by VPB in performance of its multi-year contractual dealings with Panabroker which give rise to this action (as against VPB);
>
> c.  In respect of such dealings with Plaintiff, VPB routinely utilized Citibank, New York as its correspondent bank when engaging in transfers with VPB's client,

Panabroker.  This pattern extends as far back as 2002 and established a course of dealing which showed purposeful availment of New York's banking system and legal regime.  Indeed, when VPB was performing its contractual obligations to routinely make payments to Panabroker, VPB did so by sending wire transfer instructions which directed payments to be routed through Citibank, N.A. in New York.  Such wire transfer instructions also routinely included (at SWIFT field 71A) the code "our" which, on information and belief, means that the transaction charges were to be paid by VTB, as initiator, rather than by Panabroker, as beneficiary.  Further details regarding the terms of the correspondent account agreement between VTB and Citibank, New York, can be obtained through discovery.

d.  Also, as is further discussed below, one of the claims brought in this action arises from the wrongful withdraw and/or embezzlement of VPB's assets by its officers (including, on information and belief, non-party Markus who, as alleged hereinafter laundered such money through the various LM Defendants and into New York realty investments).  Discovery is needed to determine the extent to which knowledge of Markus's alleged conduct (understood to be the subject of pending criminal proceedings in Russia) is attributable to VPB.  To the extent such knowledge is attributable to VPB, then VPB knowingly allowed its president and/or others to launder assets into New York which would provide a further basis for personal jurisdiction over VPB (and give rise to additional claims).

15.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and/or (3).

## FACTUAL ALLEGATIONS

### Breached Agreements between VPB and Panabroker

16.     On or about August 14, 2001, VPB and Panabroker entered into an agreement, captioned as a "Commission Agreement" (the "First Agreement") which provided, in pertinent part that:

   a.   "The Parties agreed . . . that Panabroker will participate in investment program for purchase, transportation and mounting of oil refining equipment with investments amount USD 500.000, (Five hundred thousand US Dollars only)"; and

   b.   VPB undertook "to pay to Panabroker . . . 14 Percent . . . from the value of all investments that will be made . . . as commission to cover Panabroker efforts and different charges related to its role in this deal."

17.     On or about December 22, 2001, VPB and Panabroker entered into a second agreement, also captioned as a "Commission Agreement" (the "Second Agreement"), which provided, in pertinent part, that:

   a.   "The Parties agreed . . . that Panabroker will participate in an investment program for the purchase, transportation and mounting of equipment for production of mineral fertilizer with investments amount USD 1.000.000,00 (One million US Dollars only)"; and

   b.   VPB undertook "to pay to Panabroker . . . 14 Percent . . . from the value of all investments that will be made . . . as commission to cover Panabroker efforts and different charges related to its role in this deal."

18.     From December 2001 to February 2007, VPB performed accordingly and paid 14% commissions as called for by the First and Second Agreements.

19.     However, in February 2007, VPB and Panabroker agreed that the commission under both agreements would reset at 12%.

20.     By way of correspondence dated January 1, 2016 (with respect to the First Agreement), VPB further advised that "the balance due to December 1, 2015" was $519,438.02 and that, with a further month of accrued interest, the total "[b]alance in [Panabroker's] favor" amounted to $524,633.30.

21.     By way of correspondence dated January 1, 2016 (with respect to the Second Agreement), VPB advised that "the balance due to December 1, 2015" was $1,035,434.29 and that, with a further month of accrued interest, the total "[b]alance in [Panabroker's] favor" amounted to $1,045,788.63.

22.     On January 19, 2016, Panabroker demanded payments from VPB in the amount of $30,000 (in connection with the First Agreement) and in the amount of $60,000 (in connection with the Second Agreement).

23.     Nonetheless, in breach of its objections under the First and Second Agreements, VPB failed to make said payments.

24.     Also, in further breach of its obligations (and despite its written acknowledgment that, as of January 1, 2016, the total balance due to and in favor of Panabroker equaled $1,570,421.93), VPB has failed to return the total balance of the investment due to Panabroker. Indeed, on information and belief, VPB has also been disconnected from payment systems. Moreover, during a telephone call between representatives for Panabroker and VPB respectively, the bank's representative advised that VPB basically has no remaining funds for payment.

25.     Furthermore, on information and belief, VPB failed to perform its obligations under the agreements because, as has been reportedly alleged in criminal proceedings in Russia, VPB officers (including Markus) had, over an extended period of time, withdrawn VPB assets for personal purposes which included the acquisition of properties in the US.    Also on information and belief, Russian authorities have alleged that VPB's former leadership falsified information relating to the availability of funds in correspondent account(s) at Citibank.

**Larissa Markus's Establishment of the LM Defendants and Their Purchase of NYC Realty**

26.     As stated in paragraphs 1 through 25 above, Markus was the organizer for each of the LM Defendants which were established on dates running from June 2008 through March 2015 (with a majority having been established in 2010).

27.     Each such entity owns real property located in New York County and, on information and belief, each such entity is (save perhaps for bank accounts used to receive rent payments) a single asset entity.

28.     On information and belief, in addition to having been the organizer for each of the LM Defendants, Markus is also the direct, indirect or beneficial owner of each such entity.

29.     Furthermore, various LM Defendants have mortgaged their respective properties, and, in particular, several such property were mortgaged in December 2015 and January 2016 including:

        a.    LM-10C which mortgaged its property on or about December 4, 2015;

        b.    LM-23H which mortgaged its property on or about January 20, 2016;

        c.    LM-20A which mortgaged its property on or about January 20, 2016; and

        d.    LM-24C which also mortgaged its property on or about January 20, 2016.

30.    It should be noted that, even prior to December 2015, the LM Defendants had mortgaged some of their respective properties over the course of several years.

31.    However, the December 2015 and January 2016 mortgage activity is noteworthy because it coincides with important developments in Russia relating to VPB and non-party Markus which are further described in the paragraphs that follow.  The concurrence of the late 2015 / early 2016 mortgage activity with the concerned developments in Russia (embezzlement type allegations against non-party Markus), underscore the risk that Markus or her associates may be mortgaging the New York properties in order to take value out of the real properties and move that value out of the jurisdiction so that it would not be available for potential judgment enforcement purposes.

32.    More specifically with respect to the recent developments in Russian, according to multiple news reports, on December 18, 2015, Russian banking authorities placed VPB in a form of temporary administration relating to non-compliance with capital requirements.

33.    In particular, a January 21, 2016 article on www.reuters.com reported, amongst other things, that:

> The central bank placed [VPB] under temporary administration on December 18, citing concerns about its liquidity and asset quality and violation of minimum capital requirements . . . Shortly afterwards, the bank's head, Larisa Markus, was arrested on suspicion of fraud [as to which her] lawyer has said there was no evidence she had engaged in criminal activity.

34.    The same article from www.Reuters.com reported that, on January 21, 2016 (i.e., a few weeks after the reported arrest of Markus and initiation of temporary administration for VPB), "Russia's central bank said . . . it had revoked the licence of Vneshprombank . . . after discovering it had a hole in its balance sheet estimated at 187.4 billion roubles ($2.3 billion)."

35.    Likewise, a February 25, 2016 article in the New York Times reported that:

Auditors reviewing Vneshprombank's liquidity found a $2.4 billion hole in its finances, the largest ever uncovered for a Russian bank.  Investigators have accused Ms. Markus and others connected to the bank of embezzling about $13 million from clients' accounts and investing some of that money abroad.  She has denied the charges.

36.     On information and belief, Russian authorities have also asserted that assets withdrawn from the bank have been invested in businesses and property outside of Russia, including in the United States.

37.     On information and belief, the LM Defendants and the real properties which they (directly, indirectly or beneficially) own constitute some of the businesses and property into which assets that were allegedly embezzled, or otherwise wrongfully withdrawn, by Markus from VPB were invested.

## FIRST CLAIM
### (Breach of Contract against VPB)

38.     Panabroker repeats and realleges paragraphs 1 thorugh 37 as if fully set forth herein.

39.     In breach of its contractual obligations owed to Panabroker pursuant to the First Agreement and the Second Agreement, VPB has wrongfully failed to pay $1,570,421.93 (plus interest which continues to accrue) to Panabroker.

40.     VPB has thereby caused Panabroker to suffer damages in an amount to be determined at trial but equal to, at least, $1.57 million.

**WHEREFORE**, Panabroker respectfully requests that the Court issue judgment, in its favor and against VPB, in an amount to be determined at trial but equal to, at least, $1.57 million plus interest which continues to accrue.

## SECOND CLAIM
### (Violations of 18 U.S.C. § 1962(d) against the LM Defendants)
### (relating to VPB as an Enterprise)

41.    Panabroker repeats and realleges paragraphs 1 through 40, as if fully set forth herein.

42.    At all material times, VPB was an enterprise within the meaning of 18 U.S.C. § 1961(4) which was engaged in and whose activities affected interstate or foreign commerce (the "VPB Enterprise"). As such, as the bank's president, Markus conducted and participated in the management, operation and conduct of VPB's affairs.

43.    At all material times, Markus was employed by or associated with the VPB Enterprise.

44.    Each of the LM Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

45.    On information and belief, based upon the allegations described by news reports referenced above, Markus embezzled, or otherwise wrongfully withdrew assets from VPB and used such assets for personal investment in properties and/or businesses located in New York.

46.    Such actions occurred over a multi-year period of time and each act of embezzlement, or otherwise wrongful withdrawal (together with all related transfers for personal investment purposes in New York) constituted specified unlawful activity within the meaning of, amongst other things, 18 U.S.C. § 1956(c)(7)(B)(iii) (relating to "fraud, or any scheme or attempt to defraud, by or against a foreign bank [as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978").

47.     On information and belief, the assets embezzled, or otherwise wrongfully withdrawn, by Markus from VPB were transferred to, or otherwise used to fund, the LM Defendants.

48.     All such transfers or fundings made with embezzled or otherwise wrongfully withdrawn assets constituted financial transactions within the meaning of 18 U.S.C. § 1956(c)(4) (the "Financial Transactions Running to the LM Defendants").

49.     On information and belief, the assets conveyed by way of the Financial Transactions Running to the LM Defendants were then used to purchase the real properties which the LM Defendants acquired during the ensuing multi-year period.

50.     All such uses of embezzled, or otherwise wrongfully withdrawn, assets to purchase real property also constituted financial transactions within the meaning of 18 U.S.C. § 1956(c)(4) (the "Financial Transactions Running from the LM Defendants").

51.     On information and belief, the LM Defendants had the same extent of knowledge as Markus regarding the underlying embezzlement, or otherwise wrongful withdrawal, of assets from VPB such that the LM Defendants knew that: (a) the property transferred to them by way of the Financial Transactions Running to the LM Defendants represented the proceeds of some form of unlawful activity constituting a felony under State, Federal or foreign law.

52.     When the LM Defendants received or transferred assets in connection with the Financial Transactions Running to (or from) the LM Defendants, they did so with intent to promote the carrying on of specified unlawful activity.

53.     Also, when the LM Defendants received or transferred assets in connection with the Financial Transaction Running to (or from) the LM Defendants, they did so with knowledge

that the transactions were designed in whole or in party to conceal or disguise the nature, location, source, ownership, or control of proceeds from specified unlawful activity.

54.    Accordingly, each of the Financial Transactions Running to the LM Defendants, as well as each of the Financial Transactions Running from the LM Defendants, constituted a violation of 18 U.S.C. § 1956(a).

55.    Those violations of 18 U.S.C. § 1956(a) also constituted racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b) (incorporating violations of 18 U.S.C. § 1956 as RICO predicate acts).

56.    On information and belief, the aforementioned racketeering activities occurred during a period of time spanning, at a minimum, 2010 through 2015 and thereby constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(5).

57.    In light of the foregoing, on information and belief, non-party Markus thus conducted or participated in the conduct of the VPB Enterprise's affairs through a pattern of racketeering activity which was in violation of 18 U.S.C. § 1962(c).

58.    Moreover, the LM Defendants agreed and conspired to further the same and knowingly did so in violation of 18 U.S.C. § 1962(d) causing injury to Panabroker in its business or property in a principal amount to be determined at trial but equal to, at least, $1.57 million plus interest which continues to accrue.

WHEREFORE, Panabroker respectfully requests that the Court issue judgment, in its favor and against the LM Defendants holding each of them jointly and severally liable: (a) in a principal amount to be determined at trial but equal to, at least, $1.57 million plus interest which continues to accrue; (b) with treble damages thereon pursuant to 18 U.S.C. § 1964(c) together

{00059163.DOC;2}                                          14

with reasonable attorney's fees plus pre- and post-judgment interest; and (c) with such other and

further relief as the Court deems just and equitable.

Dated:  March 22, 2016
      New York, New York

                     Respectfully submitted,

                     Panabroker Protecting and Intemnity Association, S.A.

                     By: _____
                     Edward W. Floyd
                     Alan Van Praag

                     Eaton & Van Winkle LLP
                     3 Park Avenue, 16th Floor
                     New York, New York 10016

                     (212) 779-9910
                     efloyd@evw.com
                     avanpraag@evw.com