USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/26/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PANABROKER PROTECTING AND INDEMNITY ASSOC., <br><br> Plaintiff, <br><br> -v.- <br><br> VNESHPROMBANK ET AL., <br><br> Defendants | 16-CV-2120 (ALC) <br><br> **MEMORANDUM AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Panabroker Protecting and Indemnity Association ("Plaintiff") brings this action against Vneshprombank ("VPB"), LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC ("LM-10C"); and LM Property Management LLC (collectively "LLC Defendants"). Plaintiff alleges that VPB is in breach of contract after failing to meet its obligations under two financial investment contracts. Plaintiff alleges that LLC Defendants violated the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), and are liable for unjust enrichment. LLC Defendants filed a motion to dismiss Plaintiff's civil RICO and unjust enrichment claims. LLC Defendants also moved to dismiss the action in its entirety on the basis of *forum non conveniens*. For the following reasons, the LLC Defendants' motion to dismiss the Civil Rico claim is GRANTED.

## BACKGROUND

The following allegations, taken from Plaintiff's complaint, are accepted as true. Plaintiff is a Panamanian corporation whose President, Serguei Sokolov ("Sokolov"), is a

resident of Texas. First Amended Complaint ("FAC") ¶ 11, ECF 43. VPB, a now defunct bank, was organized under the laws of the Russian Federation but routinely conducted business in New York. *Id.* ¶¶ 9, 14.

In August, 2001, Plaintiff and Defendant VPB executed an investment contract ("First Agreement") whereby Plaintiff agreed to invest $500,000 in an oil refining venture which included the "purchase, transportation and mounting of oil refining equipment." *Id.* ¶ 16. Sokolov who was Panabroker's "commercial assistant" brokered the deal. *Id.* ¶¶ 16–17. In exchange for Plaintiff's participation and investment, Defendant VPB was required to pay Plaintiff a commission of 14% "from the value of all investments that will be made." *Id.* ¶ 16.

In December, 2001, Plaintiff and Defendant VPB executed a second investment contract ("Second Agreement"), whereby Plaintiff agreed to invest $1,000,000 in a separate venture for the "purchase, transportation and mounting of equipment" used to produce mineral fertilizer. *Id.* ¶ 18. The Second Agreement required Defendant VPB to pay Plaintiff a 14% commission "from the value of all investments that will be made." *Id.* ¶ 17.

From December, 2001 to February, 2007, Defendant VPB paid Plaintiff 14% commissions as required under the investment contracts. *Id.* ¶ 20. In February, 2007, Plaintiff and Defendant VPB modified the investment contracts by reducing Plaintiff's commission to twelve percent. *Id.* ¶ 21.

In January, 2016, Defendant VPB acknowledged that it owed Plaintiff a $524,633.30 balance under the First Agreement. *Id.* ¶ 22. Defendant VPB also acknowledged that it owed Plaintiff a $1,045,788.63 balance under the Second Agreement. *Id.* ¶ 23. Three weeks later Plaintiff demanded a $30,000.00 payment on the balance of the First Agreement and a $60,000 payment on the balance of the Second Agreement. *Id.* ¶ 24. Defendant VPB failed to comply

2

with Plaintiff's demand. *Id.* ¶ 25. Defendant VPB has since failed to return the total balance owed to Plaintiff in the amount of $1,570,421.93. *Id.* ¶ 26. Defendant VPB informed representatives for Plaintiff that the bank has no remaining funds to meet its debts and has been disconnected from payment systems. *Id.*

Plaintiff learned that the Russian central bank revoked VPB's bank license in December, 2015, after discovering that VPB had a $2.3 billion "hole in its balance sheet."[1] *Id.* ¶¶ 34, 36. Shortly thereafter, Russian authorities arrested VPB's president, Larisa Markus ("Markus"), on suspicion of fraud. *Id.* ¶ 35. Markus was accused of "embezzling $13 million from the bank's accounts and investing some of that money abroad." *Id.* ¶ 17. Criminal proceedings in Russia have included allegations that VPB officers, including Markus, withdrew bank assets over an extended period of time for personal purposes including the purchase of real estate in the United States. *Id.* ¶ 27. Those same proceedings have also included allegations that VPB's former leadership falsified documents describing available assets in its corresponding United States bank accounts. *Id.*

In March, 2016, the Moscow Commercial Court declared VPB a bankrupt entity under Russian law. *See In re Foreign Economic Industrial Bank Ltd.*, 1:16-bk-13534 (MKV) (Bankr. S.D.N.Y.). In 2017, VPB's assigned Trustee filed a Chapter 15 Petition for recognition as a foreign proceeding in the Bankruptcy Court for the Southern District of New York. *Id.* The Bankruptcy Court issued a Recognition Order naming VPB's trustee as a foreign representative, and found that the bank is "subject to a pending foreign proceeding" under the terms of 11 U.S.C.A. § 101(23). *Id.* Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding, at 3-4 (Bankr. S.D. N.Y. Feb. 15, 2017).

---

[1] Plaintiff's allegations are based on varying news accounts. FAC ¶¶ 34–37. One news account reported that Defendant VPB had a "2.4 billion hole in its finances, the largest ever uncovered for a Russian bank." *Id.* ¶ 37.

3

Between June, 2008 and March, 2015, Markus organized each LLC Defendant with the New York Department of State. FAC ¶¶ 1–8. Markus organized each LLC Defendant as a single asset entity—each owning real property in New York County. *Id.* ¶ 29. Markus is the "direct, indirect, or beneficial owner" of each LLC entity. *Id.* ¶¶ 28, 30. Plaintiff alleges that the LLC Defendants received the assets which were embezzled, "or otherwise wrongfully withdrawn, by Markus from VPB." *Id.* ¶ 39.

Various properties owned by the LLC Defendants were mortgaged between December, 2015 and January, 2016, which coincided with Markus' arrest in Russia and the revocation of VPB's license. *Id.* ¶¶ 31, 33. Entities that have recently mortgaged properties include: LM-10C, on December 4, 2015; LM-23H, on January 20, 2016; LM-20A, on January 20, 2016; and LM-24C, on January 20, 2016. *Id.* ¶ 31. One LLC Defendant, LM-18W, sold its asset after the commencement of this action. *Id.* ¶ 33.

In 2016, Plaintiff commenced this action. Plaintiff has not executed service of process upon Defendant VPB, thus Defendant VPB has not participated in this action.

## DISCUSSION

### I. Motion To Dismiss Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face

of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## II. RICO Right Of Action

LLC Defendants move to dismiss Plaintiff's civil RICO claim, arguing that Plaintiff's injuries were not proximately caused by Defendants' conduct. LLC Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs' Mem.") at 4-16, ECF No. 53. Section 1964(c) of Title 18 furnishes a private civil action to "[a]ny person injured in his business or property by reason of a violation of § 1962." It is settled that RICO plaintiffs' injuries must be proximately caused by the predicate acts of RICO violations. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). After the U.S. Supreme Court's decision in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), the Second Circuit has exacted a strict proximate cause standard. A RICO plaintiff's injuries must be the "preconceived purpose" or the "specifically intended consequence" of a defendant's racketeering. *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994). "Thus, the cases in which RICO claims have failed involve racketeering acts directed at persons other than the plaintiffs." *Medgar Evers*

*Houses Tenants Ass'n v. Medgar Evers Houses Assocs., L.P.*, 25 F. Supp. 2d 116, 123 (E.D.N.Y. 1998), *aff'd sub nom. Abbott v. Medgar Evers Houses Assocs., L.P.*, 201 F.3d 430 (2d Cir. 1999).

Accepting the allegations in the Complaint as true, Plaintiff was injured in his business by VPB's breach of two investment agreements. VPB was unable to fulfill its contractual obligations because the bank became insolvent. Plaintiff alleges that the predicate acts constituting the RICO violation in this case are embezzlement from VPB. Although Markus' embezzlement no doubt contributed to VPB's insolvency, the bank had a $2.3 billion hole in its balance sheet. Thus, it is implausible that Markus' $13 million embezzlement was a substantial factor in causing VPB to default on its contractual obligations.

Notwithstanding the causation gap, Plaintiff's injury was not reasonably foreseeable or a natural consequence of LLC Defendants' acceptance of embezzled funds. Markus' conspiracy with LLC Defendants to embezzle funds was directed at VPB, not Plaintiff, who was merely an outside party. Plaintiff alleges that his injuries were caused by LLC Defendants' conspiracy with Markus, because "Markus was fully aware of the obligations owed to Panabroker." FAC ¶ 61. However, this does not satisfy the Second Circuit's requirement that Plaintiff's injuries be the "specifically intended consequence" of Markus' conspiracy with LLC Defendants to loot VPB. *In re American Express*, 39 F.3d at 400; *see Abrahams v. Young, & Rubicam, Inc.*, 79 F.3d 234, 237 (2d Cir.1996) (dismissing RICO claim because Plaintiff was not "the target of the racketeering enterprise" (citations omitted)), *cert. denied*, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996).

Plaintiff's contractual position with VPB also forecloses his RICO claim. VPB admitted that it owed Plaintiff $524,633.30 on the First Agreement and $1,045,788.63 on the Second Agreement, but the bank could not fulfill its obligation to Plaintiff. FAC at 22–24. Thus,

Plaintiff's contracts with VPB makes him an unsecured creditor of the bank. The Second Circuit has held that "[c]reditors of a bankrupt corporation, however, generally do not have standing under RICO" because "[t]he creditor generally sustains injury only because he has a claim against the corporation." *Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993) (citations omitted). Plaintiff's injury "is derivative of that of the corporation and is not caused proximately by the RICO violations" thus Plaintiff cannot bring suit. *Id.*

Moreover, Plaintiff's RICO claim against LLC Defendants is unripe because Plaintiff has not exhausted his contractual remedies with VPB in bankruptcy proceedings. A RICO cause of action does not accrue until the amount of damages becomes "clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994). Damages are not clear and definite where a plaintiff who claims a debt is uncollectible has not pursued all avenues of recourse to collect on that debt. *Id.* (citations omitted); *see DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010) (no RICO standing where debt might be eliminated or reduced through other remedies). "Thus, a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated." *First Nationwide Bank*, 27 F.3d 763 at 768 (citations omitted). Here, Plaintiff's Complaint includes a breach of contract claim against VPB, and Plaintiff has not alleged that he has exhausted his claims in bankruptcy proceedings by VPB's creditors.[2] Given that Plaintiff has "contractual or other legal remedies which could assuage the injury", Plaintiff's amount of damages in a RICO action are not clear and definite and his RICO claim is unripe. *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir. 2003) (citation omitted). *Cf. In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56,

---

[2] *See In re Foreign Economic Industrial Bank Ltd.*, 1:16-bk-13534 (MKV) (Bankr. S.D. N.Y.).

7

59 (2d Cir. 1998) (holding an investors injury is ripe at the time of investment because there are no other contractual or legal remedies).

Given that Plaintiff does not have a right of action under RICO due to the lack of direct injury from the racketeering activities and that such a claim is unripe due to other available remedies, LLC Defendants' motion to dismiss is granted.

**III.   Jurisdiction**

LLC Defendants argue that the Court should dismiss the entire action for lack of subject matter jurisdiction, arguing Plaintiff's RICO claim served as the only basis for jurisdiction. LLC Defendants' Reply in Support of Motion to Dismiss ("Defs' Reply") at n.1, ECF. 65. Plaintiff relied solely on § 1331 and § 1367(a) to establish jurisdiction. *See* FAC ¶ 12. Given that Plaintiff's RICO claim is dismissed, the Court is inclined to dismiss this action. Plaintiff did not plead diversity jurisdiction, and could not likely do so. Diversity jurisdiction is established between "citizens of a State and citizens or subjects of a foreign state," or between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(2)-(3). "However, diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (citations omitted). Plaintiff is a Panamanian entity. FAC ¶ 11. Defendant VPB is a Russian entity, and LLC Defendants are New York Corporations. *Id.* ¶¶ 1–10. Given the lack of diversity jurisdiction and that Plaintiff's federal claim is dismissed, the Court will grant Plaintiff an opportunity to show cause as to why the Court should not dismiss the action.

## IV. Stay

If the Court retains jurisdiction, this action will be stayed. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Given that VPB was declared a bankrupt entity under Russian law, the Bankruptcy Court issued a Recognition Order naming VPB's trustee as a foreign representative, and the Bankruptcy Court's Recognition Order included an automatic stay enjoining creditors from continuing litigation to recover against the bank's assets, the Court finds it appropriate to stay this action until the resolution of the Russian Bankruptcy Case in the Southern District of New York. *See* Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding, at 3–4 (Bankr. S.D. N.Y. Feb. 15, 2017).

## CONCLUSION

For the reasons stated above, LLC Defendants' motion to dismiss the Civil RICO claim is **GRANTED**. Plaintiff is hereby **ORDERED TO SHOW CAUSE** as to why the Court should not dismiss this action for lack of jurisdiction. Such a showing should be made on or before October 10, 2017. Defendants may respond in writing on or before October 17, 2017.

In the event that the Court retains jurisdiction, this action will be stayed until the resolution of *In re Foreign Economic Industrial Bank Ltd.,* 1:16-bk-13534 (MKV) (Bankr. S.D. N.Y.). The Clerk of the Court is directed to terminate ECF No. 52.

**SO ORDERED.**

Dated: September 26, 2017
New York, New York

ANDREW L. CARTER, JR.
United States District Judge